UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID HORWITZ, <br><br> Plaintiff, <br><br> v. <br><br> LEARJET, INC. d/b/a BOMBARDIER, <br><br> Defendant. | Case No. 24-cv-2709 <br><br> Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

### I.  Introduction

This matter comes before the Court on Defendant's motion to dismiss Plaintiff's first amended complaint for failure to state a claim under Rule 12(b)(6). [12]. For the reasons explained below, the Court grants Defendant's motion.

### II.  Background

Plaintiff worked for Defendant as a Quality Control Inspector from approximately September 30, 2010, until his termination on February 5, 2023. [11] ¶¶ 12, 22. On or about October 2010, Plaintiff was diagnosed with lung cancer. *Id.* ¶ 14. Prior to his employment with Defendant, Plaintiff also received a diagnosis of colorectal cancer. *Id.* ¶ 17. Plaintiff's wife also suffers from unspecified health conditions. *Id.* at 20.

In February 2023, Plaintiff was on Defendant's AETNA PPO plan. *Id.* at ¶ 20. On February 5, 2023, while working at his desk, Plaintiff began to feel extremely

1

tired and uncomfortable—sensations he alleges were side effects of his cancer. *Id.* at ¶ 21. Plaintiff claims he "rested his head in his hand while he contemplated whether he should work through the pain, go to the hospital, or go home." *Id.* Later that day, an HR representative asked Plaintiff to attend a virtual meeting with a manager and a supervisor. *Id.* at 22. During that meeting, the representative informed Plaintiff he was terminated for sleeping on the job. *Id.* Plaintiff claims that the representative then asked him for an explanation and he "told her about his medical condition and the side effects." *Id.* ¶ 24. Defendant still terminated Plaintiff that day, and (according to Plaintiff) terminated Plaintiff's healthcare plan effective February 6, 2023. *Id.*

### III.   Analysis

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff need not provide "detailed factual allegations" at the pleading stage. *Twombly*, 550 U.S. at 555. Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court accepts "all well-plead allegations as true," *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004), and views the "plaintiff's factual allegations and any inferences reasonably drawn therefrom in a light most favorable to the plaintiff." *Yasak v. Ret. Bd. of the Policemen's Annuity*

*Fund*, 357 F.3d 677, 678 (7th Cir. 2004)). Dismissal is warranted "only if the plaintiff can prove no set of facts in support of her claims that would entitle her to relief." *Autry v. Northwest Premium Services, Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998) (citation omitted).

### a. ADEA and ADA Claims

In Counts I and II, Plaintiff brings allegations under the ADEA and ADA, respectively, alleging Defendant terminated him for unlawful, discriminatory reasons. *See* [11] ¶ 30, 46.

To survive a motion to dismiss for an ADEA claim, "a plaintiff need only allege enough facts to allow for a *plausible* inference that the adverse action suffered was connected to her protected characteristics." *Kaminski v. Elite Stagging, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (citations omitted) (emphasis in original). A claim under "the ADA requires a bit more." *Brooks v. Avancez,* 39 F.4th 424, 433 (7th Cir. 2022). To establish "a violation of § 12112(a)," a plaintiff "must show (1) she is disabled; (2) she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (3) she suffered an adverse employment action; and (4) the adverse action was caused by her disability." *Id.* (citing *Kurtzhals v. Cnty. of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020)). A plaintiff's "best shot at stating a plausible employment discrimination claim is to explain, in a few sentences, how she was aggrieved and what facts or circumstances lead her to believe her treatment was *because* of her membership in a protected class." *Id.* at 777–778 (emphasis in original).

3

Here, Plaintiff offers no factual connection between the adverse employment action and his membership in any protected class under either the ADEA or ADA. Plaintiff claims that Defendant "took an adverse action by terminating Plaintiff based on Plaintiff's age, sixty-seven (67)," ([11] ¶ 30) but admits that his employer terminated him for sleeping on the job and admits he rested his head on his desk that same day during working hours. *Id.* ¶¶ 21–22. Even assuming Plaintiff was not actually sleeping on the job on February 5, 2023 (and instead only rested his head as he claims), the facts in the Complaint demonstrate that the HR representative, supervisor, and manager all *thought* he did so. Plaintiff offers nothing tying the perception of him sleeping on the job, ostensibly supported by his admission that he rested his head on his desk, and his age or disability. Simply put, Plaintiff pleads no facts supporting any plausible connection between the adverse action and his membership in a protected class under either the ADEA or ADA. He alleges no facts showing that anyone employed by or otherwise representing Defendant ever mentioned his age or diagnosis during his thirteen-year employment. Further, Plaintiff fails to proffer any other connection between his age and the incident on February 5, his subsequent termination on the same day, or any of his prior history—personal or professional. Because causation constitutes an element of a prima facie claim under both the ADEA and ADA and Plaintiff fails to plead any such facts, his claim must fail.

Further, the fact that Plaintiff disclosed in the termination meeting that the side effects of his cancer treatments caused his behavior does not save his claim.

4

According to the Complaint, Defendant *first* terminated Plaintiff for his behavior and then subsequently asked for an explanation, at which point Plaintiff disclosed the information regarding the side effects. Plaintiff was over 40 years of age when hired by Defendant and lived with both cancer diagnoses during the 13 years of his employment. Plaintiff merely offers the conclusory assertion that he believes he was terminated due to the expense of his and his wife's medical care on Defendant's insurance plan. Notably, however, Plaintiff offers no facts supporting this factual assertion, makes no claims that Defendant took any other adverse actions in relation to his age or disability, or that his age or disability ever came up during his employment.

Plaintiff simply asserting that Defendant terminated him because of his age and/or disability, without any supporting facts showing the required causation under the ADEA or ADA, cannot survive a motion to dismiss. *See Iqbal*, 556 U.S. at 662 (holding that putting forth "labels and conclusions" or a "formulaic recitation of the elements of a cause of action are insufficient."). Here, Plaintiff offers only that: a mere conclusory and formulaic recitation of the elements of an ADEA and ADA violation, without drawing any causal connection between his age or his disability and the adverse employment actions.

In his Amended Complaint, Plaintiff claims that this termination "for allegedly sleeping on the job" violated "Defendant's own policy" because Defendant maintained a policy that "for a written warning for a first offense for wasting time on the job, followed by a three (3) day suspension without pay for a second offense, and finally

5

termination for a third offense." *Id.* ¶ 32. The Complaint goes on to allege that "despite what is set-forth [*sic*] in the policy, Plaintiff was not given a written warning or the three (3) day suspension and was summarily terminated on the spot." *Id.* ¶ 33.

It is well-established that that a court's review on a motion to dismiss "is limited to the pleadings; however, the court 'may take into consideration documents incorporated by reference to the pleadings.'" *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017) (quoting *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991)). Though Plaintiff disputes whether the Complaint incorporates Defendant's policy (*see* [14]), the record does not support that position. As the Court already quoted above, the Complaint directly references Defendant's termination policies, claiming that under this policy he was entitled to a multi-step process instead of immediate termination. Since Plaintiff himself relies directly on the specific terms of the policy in his Complaint, the Court may consider the policy (attached as Exhibit A in Defendant's motion) in its evaluation.

That said, there remains an issue of fact regarding whether the policy Defendant submitted applied at the time of Plaintiff's termination on February 5, 2023. Exhibit A shows an effective date of July 1, 2015. [12-1]. Defendant states this policy remained in effect during 2023, but Plaintiff disputes this claim. *See* [14] at 5–6. Because the Court must construe all facts in favor of Plaintiff at this stage, the Court will not assume that this policy applied at the time of Plaintiff's termination. But this does not change the outcome here, because Plaintiff's failure to sufficiently plead any facts demonstrating any kind of connection between

6

Plaintiff's termination and his age or disability still remains fatal to his claim at the motion to dismiss stage. *See Ross v. Univ. of Chi.*, No. 18-CV-4200, 2018 WL 6448464, *8 (N.D. Ill. Dec. 10, 2018) (granting a motion to dismiss where the plaintiff only offered "a mere formulaic recitation of the elements of an ADEA violation, without drawing a causal connection between [the plaintiff's] age and an adverse employment action"); *Bucks v. Mr. Bults, Inc.*, 218 F.Supp.3d 776, 781–82 (S.D. Ill. 2016) (granting a defendant's motion to dismiss the plaintiff's discrimination claim under the ADA where the plaintiff failed to "allege facts that 'raise a right to relief above the speculative level' and 'allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'") (quoting *Iqbal,* 556 U.S. at 678).

Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's claims in Counts I and II.

**b. ERISA Claim**

Count III of Plaintiff's Amended Complaint alleges that Defendant separately violated § 510 of ERISA by "abruptly" terminating "Plaintiff and his wife's use of Defendant's healthcare coverage" on or around "midnight on February 6, 2023." [11] ¶ 55.

To establish a prima facie case "under § 510," a plaintiff must show that he or she: (1) belongs to the protected class; (2) was qualified for the job position; and (3) was "discharged or denied employment under circumstances that provide some basis for believing that the prohibited intent to retaliate or to prevent the use of benefits was present." *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 796 (7th Cir. 2005) (quotation

7

...

omitted). An "employer must have the specific intent to deprive an employee of his plan rights" and no violation will arise where "the deprivation was simply the consequence of a decision that had the incidental effect of affecting an employee's benefits." *Id.* (citing *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 295 (7th Cir.1998)). In other words, employers "must have been motivated by 'a desire to frustrate attainment or enjoyment of benefit rights.'" *Nauman v. Abbott Laboratories,* 669 F.3d 854, 857 (7th Cir. 2012) (quoting *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 796 (7th Cir. 2005)). Notably, "in a § 510 case," the "court need not 'determine whether a plaintiff has established a prima facie case where a defendant has advanced a legitimate, nondiscriminatory reason for its action.'" *Id.* (quoting *Grottkau v. Sky Climber, Inc.,* 79 F.3d 70, 73 (7th Cir. 1996)).[1]

Here, Plaintiff fails to plead any facts showing Defendant maintained a "specific intent" to interfere with his use of benefits. Plaintiff offers nothing beyond his own conclusory assertions that he and his wife incurred high medical costs and his belief that the "sleeping on the job" reason for his termination was "a pretext to fire Plaintiff." [14] at 9. In the allegations, Plaintiff offers no evidence (direct or indirect) to show that Defendant's decision to terminate him was motivated by the desire to cease paying Plaintiff's medical bills.[2]

---

[1] The Court notes that Defendants could advance a successful argument regarding a legitimate, nondiscriminatory reason for its action (i.e. terminating Plaintiff's employment for sleeping on the job). But in its Motion and Reply, Defendant's arguments regarding Plaintiff's ERISA claim only focus on Plaintiff's failure to plead specific intent to interfere with benefits under § 510. Accordingly, the Court will only address those arguments.

[2] This evidentiary gap becomes especially clear when considering that Plaintiff maintained his employment with Defendant, and thus his health insurance which included his cancer costs, since 2010.

While Plaintiff certainly need not prove his claim at this stage, he must assert *some* facts showing the specific intent § 510 requires. *See Lindemann,* 141 F.3d at 295 ("No action lies where the alleged loss of rights is a mere consequence, as opposed to a motivating factor behind the termination.") (quotation omitted). Because he fails to assert any plausible factual theory connecting Defendant's decision to terminate him with a desire to interfere with his benefits, his claim must fail.

The Court again notes that Plaintiff's assertion that he did not actually fall asleep on the job again does not save his allegations because he fails to allege any facts demonstrating a critical element of his claim—specific intent. Without more, the Court does not reevaluate an employer's internal decisions regarding applying employment policies. *See Coleman v. Donahoe,* 667 F.3d 835, 862 (7th Cir. 2012) ("In adjudicating claims under federal employment discrimination statutes, a court does not sit as a 'super-personnel department,' second-guessing an employer's 'business decision as to whether someone should be fired or disciplined because of a work-rule violation.'") (quoting *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 697 (7th Cir. 2006)).

Further, like his claims in Counts I and II, the issue of fact regarding what employee policy was in effect at the time of his termination still does not change Plaintiff's failure to plead facts alleging the third element of his § 510 claim. Accordingly, because he fails to plead any facts at all showing Defendant was motivated to interfere with his benefits, Plaintiff's claim must fail and Defendant's motion to dismiss Count III granted.

## IV. Conclusion

For the reasons explained above, the Court grants Defendant's motion to dismiss for failure to state a claim upon which this Court can grant relief [12]. Because the Court cannot say on this record that any further amendment would be futile, the Court grants Plaintiff leave to file a second amended complaint, to the extent he can do so, consistent with his obligations under Rule 11. If Plaintiff declines to amend within 21 days of the entry of this order, the Court will dismiss this case with prejudice.

Date: February 12, 2026               Entered:

　

_____
John Robert Blakey
United States District Judge